USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-18-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO MARTINEZ,

           Plaintiff,

- against -

METRO-NORTH COMMUTER RAILROAD,

           Defendant.

OPINION AND ORDER

16-CV-2164 (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

    Plaintiff Ricardo Martinez ("Martinez"), a carman at Defendant Metro-North Commuter Railroad Company ("Metro-North") filed this action under the Federal Employers' Liability Act, 49 U.S.C. § 53 *et seq* ("FELA"). Martinez alleged that on April 18, 2013, he sustained injuries during the course of his employment at Metro-North. Metro-North denied that the injury was caused by any negligence on its part, and alleged that Martinez's own negligence contributed, in whole or in part, to his injuries. The case was tried before a jury from July 18 through 20, 2017. The jury returned a verdict in favor of Martinez, and awarded damages of $510,000. The jury further found that there was no contributory negligence by Martinez.

    On August 4, 2017, Metro-North moved to set aside the verdict pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. It identified two grounds for the motion: (1) the Court erroneously admitted evidence protected by the self-critical analysis privilege and evidence of post-accident remedial measures and (2) the finding of no contributory negligence by Martinez was against the weight of the evidence. For the reasons which follow, the motion is **DENIED**.

## I. DISCUSSION

## A. Legal Standards

Under Rule 59(a), a new trial may be granted following a jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." *See* Fed R. Civ. P. 59(a). Ordinarily, a court should not grant a new trial "unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988). Unlike a judgment as a matter of law, a new trial may be granted under Rule 59 even if substantial evidence exists to support the jury's verdict. *See Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992). Moreover, in considering a motion for a new trial, a court "is free to weigh the evidence ... and need not view it in the light most favorable to the verdict winner." *Id.* (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978)). Nevertheless, a court should grant a Rule 59 motion only where the jury verdict is "egregious" given the evidence presented. *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).

As an initial matter, the Court's consideration of Metro-North's motion is hampered because the memorandum in support does not indicate the specific items of evidence which it believes were erroneously placed in evidence. There are no references in the memorandum[1] to actual exhibits; to trial testimony; or any discussions, on or off the record, that identify the alleged errors at the trial. For example, Metro-North alludes to evidence regarding "self-critical analysis privilege" but no specific invocation of the alleged privilege is identified. This lack of specificity alone is fatal to Metro-North's motion because it cannot demonstrate a "seriously

---

[1] Prior to the taking of testimony, counsel for Metro-North does identify three Plaintiff's exhibits, 7A, 7B, and 7C, as relevant to the post-accident remedial measures issue. (Tr. at 2:6-12.) As noted by Plaintiff's counsel, however, the exhibits do not actually show any changes to the area where the accident occurred. (Tr. at 4:4-12.)

2

erroneous result" without reference to the evidence before the jury. Even were Metro-North to make proper references to the record, however, its motion is meritless.

## B. The Self-Critical Analysis Privilege

The self-critical analysis, or self-evaluative, privilege "has led a checkered existence in the federal courts." *Wimer v. Sealand Service, Inc.*, No. 96-CIV-8730 (MHD), 1997 WL 375661, at *1 (S.D.N.Y. July 3, 1997). "Neither the Supreme Court nor the Second Circuit has settled the question of whether the self-critical analysis privilege should be recognized as a matter of federal law." *Mitchell v. Fishbein*, 227 F.R.D. 239, 251 (S.D.N.Y. 2005). To the extent that it is recognized, the privilege is based on the premise that it is good public policy for an entity to perform confidential analysis of its actions with an eye toward correcting errors and improving performance and that "disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law or with professional standards." *E.B. v. New York City Board of Education*, 233 F.R.D. 289, 296 (E.D.N.Y. 2005) (quoting *Mitchell*, 227 F.R.D. at 252)); *Sheppard v. Consolidated Edison Co. of New York, Inc.*, 893 F. Supp. 6, 7 (E.D.N.Y. 1995) The privilege "only applies to the analysis or evaluation itself, and not to the facts which are analyzed." *Lasky v. Am. Broad. Cos. Inc.*, 1986 WL 9223, at *2 (S.D.N.Y. Aug. 13, 1986).

The privilege cannot be invoked in the abstract. The party seeking the privilege has the burden of demonstrating that the privilege applies to the information sought to be kept private:

> [F]irst, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed.

*Chemical Bank v. Affiliated FM Insurance Co.*, 1994 WL 89292, at *1 (quoting Note, *The Privilege of Self-Critical Analysis*, 96 Harv.L.Rev. 1083, 1086 (1983); *Dowling v. American*

3

*Hawaii Cruises, Inc.*, 971 F.2d 423, 425-26 (9th Cir. 1992). Metro-North does not identify any evidence which appropriately falls within the claimed privilege. It identifies no confidential self-analysis to which the privilege would attach and presented no witness to support counsel's assertions about the character or intent of any meetings. Here, the invocation of the purported privilege was limited to arguments by counsel for Metro-North prior to the presentation of any evidence:

> MR. RIOS: It's defendant's position that this procedure with the safety committee was created for the railroad to be proactive in inquiring and possibly curing conditions that may exist. And while they invite the general population of the work force to provide information, the purpose of it is to improve the working conditions, which I think is paramount to the self-critical analysis privilege.
> The privilege is basically that companies should do this type of analysis, investigation, etc., so that they can improve the workplace and not be subjected to the use of this information during litigation, and that would cause a chilling effect on entities that do perform this type of analysis such as safety committee meetings.

Trial Transcript ("Tr.") at 6:4-16 Counsel's reliance on committee meetings does not provide support for the privilege as the description of those meetings indicates that the topics discussed were meant to be made public:

> Q. By the way, when you have these meetings, do you just discuss one topic? How does that work?
> A. No. We discuss numerous topics. Anything that anybody wants to bring to the table is mentioned that day. Could be anything from those bolts to a crane that has something wrong with it, to just anything. Stop signs for forklifts. There were a few different things we talked about.

(Tr. at 181:19-25) (Testimony of Gerald T. Adams, general foreman of the shop where the accident occurred, Tr. at 177:17-178:7). Any argument based on self-critical analysis thus has no foundation and is meritless.

## B. Post-Accident Remedial Measures

Citing Rule 407, Federal Rules of Evidence, Metro-North asserts that the Court impermissibly allowed evidence related to its actions after the incident. Rule 407, however, only

4

prohibits evidence offered to prove: negligence; culpable conduct; a defect in the product or its design; or a need for a warning or instruction." F. R. Evid. 407. The Court may admit evidence for other purposes, "such as impeachment." *Id.* As with the self-critical analysis evidentiary issue, however, Metro-North does not specify what evidence was "erroneously permitted" that violated the legal framework on post-accident remedial measures. Martinez had argued that any post-incident evidence it intended to offer was admissible to rebut Metro-North's claim that Martinez was contributorily negligent. *See Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1560-61 (2d Cir. 1992). Metro-North decided not to submit a memorandum in opposition to Martinez's position.

Prior to the limited arguments in the memorandum in support of the instant motion, Metro-North did not address the scope of the *Pitasi* case concerning post-accident behavior, and does not make clear what specific testimony or exhibits violated the principles discussed in that case. In contrast, Martinez presented substantial evidence concerning the circumstances leading to his injury, including complaints from employees at public safety meetings. Even in the absence of testimony concerning events after the incident, there was ample evidence for the jury to reach its verdict. The Court concludes that were Metro-North to actually identify what specific evidence it proposed to challenge, and to successfully demonstrate that such evidence raised questions under Rule 407, the admission of such evidence did not materially affect the jury's verdict.

## C. Allegation of Contributory Negligence

As with the other bases asserted by Metro-North, its arguments concerning contributory negligence by Martinez are fatally hampered by the failure to provide any record citation to support its claims. For example, Metro-North asserts that "[t]here was ample evidence presented

5

of the plaintiff's negligence" but refers generally to three items in support of this position. First, Metro-North maintains that Martinez testified that he was walking backward at the time of the incident. Second, it claims that another employee testified that when he worked the crane that Martinez was operating at the time of the incident, he walked forward. Third, Metro-North cites general safety rules which require employees to be alert for hazards.

These examples simply do not meet Metro-North's burden in seeking to overturn the jury's determination that Martinez was not contributorily negligent. First, while Metro-North does have some support for its assertion that Martinez was moving "backward," *see, e.g.*, Tr. at 49:9 ("fell backwards"), the overall testimony was somewhat ambiguous. *See, e.g.*, Tr. at 148:9 (Martinez was "walking like backwards, sideways"). Each side got to argue to the jury about what actually happened. After hearing the conflicting testimonies, it was the jury's role to decide the facts concerning Martinez's behavior.

The testimony by the witness who also did the job that Martinez was performing at the time of the accident is also not clear and unambiguous:

> Q. When you make the move, do you usually walk -- you said in front of you. Are you <u>usually</u> walking in a forward motion?
> A. Yeah.

(Tr. at 156:19-21) (emphasis added).

More importantly, this dispute about the direction Martinez was moving at the time of the accident was not the dispositive question for the jury. Rather, the jury was asked to find whether Martinez was negligent. There was considerable testimony concerning the substantial size and weight of the crane being operated by Martinez, and arguments to the jury whether it was more important to always face forward or to watch the crane and its path. While Metro-North focuses on the direction Martinez was moving, it failed to elicit testimony that Martinez's actions were

6

negligent. Indeed, the only witness asked directly about the issue (and the only person who witnessed the accident that testified at trial) indicated the opposite:

> Q. And in the 10 to 15 seconds before Mr. Martinez's accident occurred, did you see him do anything which you understood to be contrary to Metro-North safety rules?
> . . . . . .
> A. He was doing everything right.

(Tr. 152:9-11, 25) (testimony of Christopher Ilardi, a carman at Metro-North for nine years, Tr. at 144:19-145:3)

The jury heard the evidence, and concluded that Martinez was not negligent. The Court should not second guess that decision:

> A trial judge should be least inclined to disturb a jury's verdict, based entirely or primarily upon witness credibility, where the conflicting accounts of the witnesses are equally plausible (or implausible), and there is no independent evidence in the trial record clearly demonstrating that, if a miscarriage of justice is to be avoided, one party's witnesses should not be believed. In those circumstances, the trial judge should accept the jury's findings, regardless of any doubts of his own in the matter.

*Ricciuti v. New York City Transit Auth.*, 70 F. Supp. 2d 300, 308 (S.D.N.Y. 1999). In this case, there was credible evidence presented by Martinez to support the verdict.

### D. Allegation that the Jury's Verdict was Excessive

Metro-North only makes passing reference to the amount of the jury's verdict, including on page eight of its memorandum the statement that the damages award was excessive. The statement seems no more than an afterthought, and there is no development of this argument, no comparison of allegedly similar cases, and no discussion of why the damages are supposedly excessive. This does not approach Metro-North's burden on this issue. A jury verdict is excessive if it is so high as to "shock judicial conscience." *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 567 (2d Cir. 1988). This is not such a case. The evidence presented by Martinez, if credited by the jury, could have sustained a greater amount than the verdict in this case.

7

## II. CONCLUSION

Metro-North raises multiple issues in its post-trial motion. It has presented no evidence from the record to support any of the bases set forth in the motion. The motion is **DENIED** in its entirety. **IT IS HEREBY ORDERED** that judgment be entered for Plaintiff Ricardo Martinez, and against Defendant Metro-North Commuter Railroad Company, in the amount of $510,000. The Clerk of the Court is directed to close case 16-CV-2164.

**SO ORDERED this 18th day of October 2017**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**